# Supreme Court of the Navajo Nation

---

### The Navajo Nation, Plaintiff-Appellee,
### v.
### Wilbert Murphy, Defendant-Appellant.
### Decided April 21, 1988

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Loretta Morris, Esq., and Leonard Tsosie, Esq., DNA-People's Legal Services, Inc., Crownpoint, New Mexico, for the Appellant; Herman Succo, Esq., Office of the District Prosecutor, Crownpoint, New Mexico, for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

We granted this appeal from a criminal conviction to decide: (1) whether the district court erred by ruling that the defendant cannot invoke the husband-wife privilege at trial; (2) whether the defendant's extrajudicial statement, "[I] hit him [the victim] several times," should have been excluded as hearsay; and (3) whether there is sufficient evidence to support the defendant's conviction of aggravated battery.

## I

In the evening of March 14, 1987, the victim, Wilson Murphy, was returned to his house near Yatahey, New Mexico by his daughter, Thelma Murphy. Upon arrival, Thelma observed that only the defendant, Wilbert Murphy, was present at the house. The victim resided in the house, which was located on allotted land, only with the defendant who was his son.

In the morning of March 15, 1987, the defendant showed up in Shiprock, New Mexico at the residence of Ms. Jodie Medina's mother. Ms. Medina is the defendant's alleged common-law wife. While there the defendant told Ms. Medina that his father was dead. When she asked the defendant "how, what happened?" the defendant replied that "he hit him several times." Tr. at 30, 31. Later that same morning, the defendant and Ms. Medina returned to Yatahey, New Mexico, and from there the defendant reported the death to the sheriff's office in Gallup, New Mexico.

When the police arrived a short time later, they found the victim lying on the floor of the house. Examination revealed bruises all over the area of the face.

*10*

Cuts were apparent above the right eye and on the lip. There were also several bruises and cuts on the arms and on the abdominal area. There was blood on the floor near the victim's head, on the carpeting, and on a wall behind the victim's head. The medical investigator arrived at 1:00 p.m. and after examination concluded that death had occurred approximately 12 hours earlier. Death by natural causes was ruled out.

The defendant was taken into custody by McKinley County sheriff's officers who were the first ones on the scene. Later, two FBI agents and three Navajo tribal police officers arrived. The defendant was given his miranda rights by an officer from the Navajo Division of Public Safety prior to initial questioning. The defendant immediately refused to make any statements without the assistance of an attorney. The defendant's clothes were confiscated and sent to the FBI crime laboratory in Washington, D.C. for processing. The results of the tests on the clothes were not available at the time of the defendant's trial.

On April 14, 1987, the defendant was charged with aggravated battery, in violation of 17 N.T.C. § 317 (1977). On the same date, the prosecutor listed on the criminal complaint all the witnesses for the Navajo Nation. Included in the list was Ms. Medina. No objection to Ms. Medina as witness for the Navajo Nation was ever raised by the defense prior to trial.

The defendant was brought to trial on April 29, 1987. After three witnesses had been directly examined and cross-examined, the prosecutor called Ms. Medina to the stand. Ms. Medina was sworn in as a witness without objection. The relevant portion of the testimony then went as follows:

Prosecutor: You are aware of the trial of this case; you know who is on trial here today?
Ms. Medina: Yeah.
Prosecutor: Who?
Ms. Medina: My boyfriend.
Prosecutor: Can you see him in this court?
Ms. Medina: Yeah.
Prosecutor: Where is he at?
Ms. Medina: Sitting right there.
Prosecutor: Can you point to him?
Ms. Medina: Right there.
Prosecutor: Okay, how is he related to you?
Ms. Medina: He was my boyfriend.
Prosecutor: Your boyfriend?
Ms. Medina: Yeah.
Defense: Your honor, I want to object to the testimony of this witness due to the fact that this witness is the wife of the defendant; had been living together for over two years, and they have a child, and I believe that there is a rule that recognizes privileges between husband and wife. She is a common-law wife of the defendant and common-law marriages are recognized, pursuant to Louise Etsitty case which was, has been decided by the Supreme Court, and also the Ketchum case. Therefore we object to her testimony.

The district court ruled that the husband-wife privilege was unavailable to the defendant, because the evidence presented through testimony did not show that a marital relationship existed. The key evidence that supported the court's ruling came from Ms. Medina's testimony, wherein she had identified the defendant three times as her "boyfriend." Other evidence showed that Ms. Medina and the defendant maintained separate residences: Ms. Medina in Shiprock, New Mexico and the defendant in Yatahey, New Mexico. The court further found that the parties' relationship had never been validated as a marriage according to law.

The failed attempt to keep Ms. Medina off the witness stand resulted in damaging testimony against the defendant. Upon questioning by the prosecutor, Ms. Medina testified that the defendant had told her that "his father was dead." She testified that she asked the defendant "how, what happened?" and he replied that "he hit him several times." Tr. at 30, 31. Despite objections from defense counsel based upon hearsay, the court admitted the statements as admissions by the defendant. Indisputably, Ms. Medina's testimony was the crucial evidence used to link the defendant to the crime. The defendant was sentenced to 180 days in jail with no fine. On June 19, 1987, the defendant's sentence was stayed pending our decision on appeal.

## II

### A

The husband-wife privilege claimed by the defendant is a recognized privilege under Rule 13, Nav. R. Evid. (1978 ed.). Despite the lack of an accompanying commentary, the consensus is that the drafters of Rule 13 relied upon the reasons that justified the use of the privilege in federal courts. The Navajo court structure and the rules used by our courts are commonly known to be patterned after the federal system.

American jurisprudence has traced the husband-wife privilege to medieval England, where it originated as a rule of absolute disqualification. The belief was that a wife could not be produced as a witness either for or against a husband. *Trammel v. United States*, 445 U.S. 40, 44 (1980). Medieval jurisprudence, apparently, did not recognize a wife's separate legal existence from her husband, because the husband and wife were considered one and the husband was the one. *Trammel v. United States*, *id.* Although the American courts did not fully embrace the English concept, the rule entered American jurisprudence well intact. It was not until *Funk v. United States*, 290 U.S. 371 (1933), that the rule evolved into a privilege in the federal courts, rather than one of absolute disqualification. The modern rationale for the rule has been aptly stated by the United States Supreme Court: "The modern justification for this privilege against adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the marriage relationship." *Trammel v. United States*, 445 U.S. at 44.

The original justification for the privilege has no support in Navajo tradition

and culture. Navajo society is matrilineal and matrilocal which automatically precludes conceiving a rationale similar to the one begotten by medieval English beliefs. Navajo tradition and culture have always revered the role of Navajo women within Navajo society; thus, the husband-wife privilege, as utilized in Navajo jurisprudence, must be based upon a rationale different from the belief that a wife is legally non-existent within a marriage.

Traditional Navajo society places great importance upon the institution of marriage. A traditional Navajo marriage, when consummated according to a prescribed elaborate ritual, is believed to be blessed by the "Holy People." This blessing ensures that the marriage will be stable, in harmony, and perpetual. A rule whose justification is to prevent the breakup of a marriage is not contrary to the beliefs of traditional Navajo society. The husband-wife privilege, as it is invoked in Navajo jurisprudence, is then justified by Navajo society's interests in preserving the harmony and sanctity of the marriage relationship.

Perhaps in the future, we may be asked to weigh the rule and its purpose, against the justice system's desire for disclosure of all relevant evidence in litigation. But until then, the husband-wife privilege is a necessary component of Navajo jurisprudence, given that marriage is important to Navajo tradition and culture.

B

The need to protect the harmony and sanctity of a marriage arises only where there is a marriage. A marriage must exist before the husband-wife privilege is available, and it can only be invoked to prevent adverse spousal testimony. The burden is upon the defendant to prove that he and Ms. Medina were married during the time of the alleged marital communication.

The defendant contends that his relationship with Ms. Medina can be recognized as a common-law marriage. Relationships commonly referred to as common-law marriages have been recognized as marriages within the Navajo Nation. *In the Matter of the Validation of Marriage of: Ketchum*, 2 Nav. R. 102 (1979). According to *Ketchum*, all these elements must be proven to establish a common-law marriage: (1) present consent to be husband and wife; (2) actual cohabitation; and (3) actual holding out to the community to be married. *Id.* at 105.

There cannot be a marriage without a voluntary agreement or consent between the parties to be married. And a husband cannot be a mere boyfriend. Ms. Medina, defendant's alleged spouse, has testified to her belief that the defendant is her boyfriend, therefore the mutual present consent to be husband and wife is lacking.

Mutual present consent alone is not sufficient to establish a common-law marriage. The parties must carry out their agreement to be husband and wife by actual cohabitation. In other words, they must openly live together in the same place as husband and wife. Evidence presented in this case shows that the defendant resides in Yatahey, New Mexico and Ms. Medina resides in Shiprock, New

Mexico; a distance of 85 miles separates the two. Actual cohabitation has not been established.

*Ketchum, id.*, further requires that the parties actually hold themselves out to the community as married. There must be some public recognition that the parties are married, because the public and the Navajo Nation have an interest in the marriage agreement. No evidence has been presented by the defendant to satisfy this element.

We agree with the district court that a marriage has not been shown to exist between the defendant and Ms. Medina. This Court holds that the district court did not err by ruling that the defendant cannot invoke the husband-wife privilege at trial.

## III

We have just determined that the defendant cannot bar Ms. Medina as a witness for the Navajo Nation. The defendant contends that should we decide the first issue for the Navajo Nation, then we must decide whether the defendant's extrajudicial statement should have been excluded as hearsay. The defendant wants us to assign error to the admission of his statement, "I hit him several times," because that statement was crucial to his conviction.

Hearsay is "an out of court statement of a person other than the one testifying offered in evidence in order to prove the truth of the matter asserted in that statement. " Rule 25, Nav. R. Evid. (1978 ed.). Without question, Rule 25 makes the defendant's statement hearsay. But certain statements that are otherwise hearsay are admissible as exceptions to the hearsay rule. See Rule 26, Nav. R. Evid. (1978 ed.).

Rule 26 permits admission of hearsay conditional upon proof that the statements are trustworthy. In addition, these statements must not violate other exclusionary rules of evidence. An admission of a party opponent is an exception to the hearsay rule.[1] Rule 26(24), Nav. R. Evid. (1978 ed.). It was under this exception that the defendant's statement was admitted. The district court, apparently, found no bar to the admission of the defendant's statement, and based upon the record on appeal, neither do we. We hold that the district court properly admitted the defendant's statement as an admission of a party opponent.

## IV

The remaining question is whether there is sufficient evidence to support the defendant's conviction of aggravated battery. The defendant contends that the only evidence submitted by the prosecution is Ms. Medina's testimony on his

---

1. Under the federal rules, an admission of a party opponent is not hearsay. Rule 801(d)(2), Fed. R. Evid. The rationale for that theory is that the admissibility of an admission is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.

admission, which, according to the defendant, is insufficient to support his conviction without corroborating evidence.

We will not sustain a conviction based solely upon an extrajudicial admission. The possibility is great that an alleged admission may be fabricated to establish the defendant's guilt. We doubt that an admission, in of itself, is sufficient to satisfy the law that in every criminal case, the Navajo Nation must prove every element of the offense beyond a reasonable doubt. 17 N.T.C. § 206 (1977); *Navajo Nation v. Carty*, 1 Nav. R. 296, 298 (1978).

The rule just established does not preclude use of an admission, in conjunction with other evidence, direct or circumstantial, to prove guilt. Here, the defendant's admission is corroborated by evidence that the victim was severely beaten and death ensued; death was not the result of natural causes; only the defendant was last seen with the victim; only the defendant resided with the victim; the defendant took flight to Shiprock, New Mexico; the defendant delayed reporting the incident to the authorities; and the defendant refused to comment to the authorities on the incident.

The Navajo Nation has the duty to show, by proof beyond a reasonable doubt, that the defendant unlawfully applied force to the person of Wilson Murphy, or that the defendant intentionally or knowingly caused serious physical injury to the person of Wilson Murphy. 17 N.T.C. § 317 (1977). On review, in determining whether evidence is sufficient to support the defendant's conviction, we will view the evidence in the light most favorable to the Navajo Nation, and resolve all reasonable inferences against the defendant. *See State v. Hunter*, 102 Ariz. 472, 433 P.2d 22 (1967) .

We believe that the defendant's admission, considered together with the corroborative evidence, supports the district court's conclusion that the defendant is guilty of the crime charged. We hold that there is substantial evidence to support the defendant's conviction of aggravated battery.

The judgment is affirmed.